UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEBRA THORSON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No.: 4:25-CV-01661-JMB ) |
| DEPUTY CONNOR PRITCHETT, ET AL., | ) ) ) |
| Defendant. | ) |

# *DEFENANTS DEPUTIES CONNOR PRITCHETT AND CARL SMITH'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO STAY OR DISMISS*

COME NOW, Defendants Gasconade County, Missouri, Sheriff's Deputies Connor Pritchett and Carl Smith in their individual capacities ("Defendants"), and for their Memorandum in Support of Their Motion to Stay and/or Dismiss under Rule 12(b)(6),[1] state:

### *I.        INTRODUCTION*

On November 11, 2025, Plaintiff filed her Complaint against Defendants arising out of a call on July 20, 2025, pertaining to a dispute in Rosebud where Plaintiff purportedly mentioned others experienced "gastrointestinal difficulties" after eating at Ruthie's Family Restaurant, LLC. Doc. 1, ¶¶ 1–2, 4. Plaintiff attempted to raise the following four counts:

   I.   42 U.S.C. § 1983 – Unlawful Seizure/False Arrest against Defendants;

   II.  False Imprisonment against all Defendants;

   III. 42 U.S.C. § 1983 – First Amendment Retaliation Against Defendants; and

---

[1] All references to Rules are to the Federal Rules of Civil Procedure unless otherwise noted.

IV. Intentional Infliction of Emotional Distress against all defendants.

Doc. 1. For the reasons stated, *infra*, the matter should be stayed. In the alternative, Defendants are entitled to qualified immunity regarding Plaintiff's federal claims, and Defendants are entitled to dismissal of Plaintiff's state law counts based on official immunity and failure to state a claim.

## II.     STANDARD OF REVIEW

The determination to issue an order dismissing or staying a matter based on ongoing parallel criminal proceedings is within the power and discretion of the District Court. *See Wallace v. Kato*, 549 U.S. 384, 393 (2007); *Russell v. Strickland*, No. 2:19-cv-39-TBM-MTP, 2021 U.S. Dist. LEXIS 168402, at *3 (S.D. Miss. Apr. 1, 2021) (discussing option to dismiss or stay). A District Court's determinations regarding protective orders and privilege are reviewed for an abuse of discretion. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S. Ct. 2199, 2209 (1984)*; Rabushka ex rel. United States v. Crane Co.*, 122 F.3d 559, 565 (8th Cir. 1997).

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989)). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co.*, Inc., 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements," will not pass muster. *Ashcroft,* 556 U.S. at 678.  In support of any type of cause of action, a plaintiff is required to plead more than a mere "unadorned, the-defendant-unlawfully harmed-me accusation." *Id.* at 678. This tenet is especially true in cases involving government entities given the potential application of an immunity defense. *Id.* at 685.

Furthermore, a court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). "Videos of an incident are necessarily embraced by the pleadings," so they may be considered in deciding a motion to dismiss. *Ching v. City of Minneapolis*, 73 F.4th 617, 621 (8th Cir. 2023). Additionally, a court need not "adopt the plaintiff's version of facts if they are 'blatantly contradict[ed]' by video evidence." *Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019) (alteration in original) (quoting *Boude v. City of Raymore*, 855 F.3d 930, 933 (8th Cir. 2017)).

### III.     ARGUMENT – STAY

The U.S. District Court for the Eastern District of Arkansas has summarized:

> The *Younger* principle provides that federal courts should abstain from hearing cases when there is an ongoing state judicial proceeding that implicates important state interests, and when that proceeding affords an adequate opportunity to raise the federal questions presented. *See Norwood v. Dickey*, 409 F.3d 901, 903 (8th Cir. 2005). Because Plaintiff's state criminal case is still pending, "a federal court must not, save in exceptional and extremely limited circumstances, intervene by way of either injunction or declaration in an existing state criminal prosecution." *Younger*, 401 U.S. at 56. The United States Supreme Court reaffirmed its commitment to the "hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments" in a recent decision, *Wallace v. Kato*, 549 U.S. 384, 392, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007), citing *Heck v. Humphrey*, 512 U.S. 477, 482, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1993).
>
> > If a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the

3

> power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. *See* [*Heck*], 512 U.S. at 487-488, n. 8, 512 U.S. 477, 114 S.Ct. 2364, 129 L. Ed. 2d 383 (noting that "abstention may be an appropriate response to the parallel state-court proceedings"); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, Heck will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit. *Edwards v. Balisok*, 520 U.S. 641, 649, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997); *Heck*, 512 U.S., at 487, 114 S.Ct. 2364.

*Wallace*, 549 U.S. at 393-94.

*McGraw v. Adams*, No. 5:12-cv-00260-SWW-JJV, 2012 U.S. Dist. LEXIS 147833, at *2–4 (E.D. Ark. Sep. 25, 2012). More recently, this has been summarized as follows:

> In effect, Stork is seeking to simultaneously litigate the same issues in both this civil lawsuit and his pending criminal case. Permitting such "parallel civil litigation" runs counter to "core principles of . . . comity, consistency, and judicial economy*." McDonough v. Smith*, 139 S. Ct. 2149, 2158, 204 L. Ed. 2d 506 (2019). Allowing the civil case to proceed while the criminal case is ongoing also "opens up another can of worms, because civil discovery is much broader than criminal discovery—that is, criminal defendants can learn a lot more about the prosecution's case through civil discovery than they otherwise would be able to in the criminal case alone." *Commodity Futures Trading Comm'n v. Nowak*, No. 19-CV-6163, 2020 U.S. Dist. LEXIS 100118, 2020 WL 3050225, at *2 (N.D. Ill. June 8, 2020). "The distinction between the two discovery protocols is not idle: criminal discovery is narrower because of concerns that criminal defendants may use this information to impede investigations into them, tamper with witnesses, or craft more airtight perjured testimony." *Id.*
>
> Stork's claim that the officers fabricated evidence to use against him in the criminal case poses particular problems. In *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." Thus, a claim alleging fabricated evidence or other forms of wrongful prosecution cannot be brought while "criminal proceedings are ongoing," and instead accrues only when "the criminal

4

> proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck*." *McDonough v. Smith*, 139 S. Ct. 2149, 2158, 204 L. Ed. 2d 506 (2019).
>
> The Supreme Court has directed that "[i]f a plaintiff files a [civil] claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case . . . is ended." *Wallace v. Kato*, 549 U.S. 384, 393-94, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007); *see also United States v. Kordel*, 397 U.S. 1, 12 n.27, 90 S. Ct. 763, 25 L. Ed. 2d 1 (1970) (observing that a court may stay a civil proceeding pending resolution of criminal proceedings "when the interests of justice" require). "If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit." *Wallace*, 549 U.S. at 394.

*Stork v. Havens*, No. 2:21 CV 176, 2021 U.S. Dist. LEXIS 164797, at *3–5 (N.D. Ind. Aug. 31, 2021).

Under Missouri law, felony harassment charges are to be commenced within three years from the date of the offense. RSMo § 556.036. The "likelihood of a criminal case" has not ended. *Wallace*, 549 U.S. at 394. The parallel proceedings here with a likely prosecution would offend the rationale asserted by the U.S. Supreme Court in *Wallace*, especially as a claim of false arrest has the direct potential to impugn a conviction based on felony harassment. Accordingly, this Court should stay or dismiss Defendants.

## IV.   ARGUMENT – 12(b)(6)

Defendants address entitlement to dismissal for each count in the order raised by Plaintiff.

**A. Plaintiff's claims in Count I (Fourth Amendment) against Defendants should be dismissed based on qualified immunity.**

Plaintiff has purported to allege Defendants arrested Plaintiff "without valid legal process" and without "probable cause or legal justification." Doc. 1, ¶ 47.

As the Eighth Circuit has summarized:

5

> Qualified immunity shields a police officer from suit unless his conduct violated a clearly established right of the plaintiff. A plaintiff bringing a claim under 42 U.S.C. § 1983 must show that the officer violated a constitutional right, and that the right was clearly established at the time of the violation. A right is clearly established only if any reasonable officer would understand that what he is doing violates that right. Existing law must have placed the constitutionality of the officer's conduct beyond debate.

*Buschmann v. Kansas City Bd. of Police Commissioners through Dean*, 76 F.4th 1081, 1084 (8th Cir. 2023) (internal citations omitted). Qualified immunity is immunity from suit, rather than a defense to liability, and the entitlement to such immunity "is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526–27 (1985). The Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

With respect to an alleged unlawful detention under the Fourth Amendment, "The question that we must answer is whether, under these circumstances, a reasonable officer would have believed [a plaintiff] had committed or was committing an offense." *Ryno v. City of Waynesville*, 58 F.4th 995, 1005 (8th Cir. 2023) (internal citation omitted). In so doing, officers are entitled to rely on the veracity of information supplied by the victim of a crime, witness statements, observations, and inconsistencies. *See id.* In *Ryno*, the Eighth Circuit did just that—analyzed the question stated based on what was presented to two officers—and concluded the officers were entitled to qualified immunity regarding arresting a suspect for violating an order of protection, harassment under RSMo § 565.090.1, and stalking. *See id.* at 1005–06. The officers were partially familiar with previous background resulting in the suspect pleading guilty to harassing a former romantic interest, an order of protection, and "several reports from multiple witnesses about Ryno's close proximity to [the victim]." *Id.* at 1000, 1005. The measure for qualified immunity is whether *arguable* probable cause existed, as "[a]rguable probable cause exists even where an

officer mistakenly arrests a suspect believing it is based on probable cause if the mistake is objectively reasonable." *Id.* at 1006 (internal quotations and citations omitted).

In *Just v. City of St. Louis*, the Eighth Circuit pointed out that the question of arguable probable cause is "a legal question, which we have the ability to resolve." 7 F.4th 761, 767 (8th Cir. 2021) (internal citation omitted). In *Just*, a truck owner (Just) ran out of gas, left his truck unattended to retrieve gasoline, and returned to find a stranger (John Doe) rifling through his console. *Id.* at 764–65. John Doe believed the truck to be his brother's, and upon realizing his mistake, exited the truck. However, Just called 911 and John Doe left the scene. A third-party arrived, called John Doe back to the scene, and informed the police that Just "had chased him while brandishing a knife." *Id.* at 765. After further discussion, followed by detention of both Just and John Doe, both were released without charges being raised. *Id.* Just filed suit under the Fourth and First Amendment, claiming false arrest and retaliation. The officers relied on when they arrived on the scene, the differing narratives, that both John Doe and the third party confirmed Just chased John Doe with a knife, and that they found John Doe to be credible in arguing they had arguable probable cause. *Id.* at 767–68.

The Eighth Circuit found, "John Doe's and the third party's reports were sufficient to have provided probable cause to arrest Just for assault in the fourth degree under Missouri law." *Id.* at 768. Contentions of Just did not diminish the officers' probable cause to belief he had committed a crime, and the fact no formal charges were initiated similarly did not diminish their beliefs. *Id.* (internal citations omitted). The Court concluded the officers were entitled to qualified immunity. *Id.*; *see also id.* at 767 (quoting *Linn v. Garcia*, 531 F.2d 855, 861 (8th Cir. 1976) ("It is not material that the person arrested may turn out to be innocent, and the arresting officer is not required to conduct a trial before determining to make the arrest.").

Here, the video evidence, embraced by the pleadings, blatantly contradicts Plaintiff's version of the facts alleged in her Complaint. *See Holland v. City of Sikeston*, No. 1:24-cv-00201-CMS, 2025 U.S. Dist. LEXIS 190247, at *11 (E.D. Mo. Sep. 26, 2025) (internal citations omitted). Plaintiff characterizes the facts that she had suffered gastrointestinal difficulties at Ruthie's; that the Incident Report reflects Plaintiff was able to call at least one person who had suffered from food poisoning after eating at Ruthie's and informed the officers of the same; transported her to the Owensville Police Department 27 miles away; and that a reasonable officer would not have believed Plaintiff could be arrested for felony harassment under RSMo § 565.090. Doc. 1, ¶¶ 23, 28, 39, 41, 46. However, body camera footage shows the following:

- Deputy Pritchett received a phone call from Lindsey LaFrance regarding an "ongoing issue" with Plaintiff from six or seven months ago, that Plaintiff told customers Ruthie's served food poisoning, that everybody got sick when they came into Ruthie's, and that they should not eat there. Ex. A, Deputy Pritchett Body Cam, Victim Phone Call, 0:30–1:15;

- Ms. LaFrance reported to Deputy Pritchett that Plaintiff first said to an employee of Ruthie's and her mother not to eat there, and the food is terrible / awful. Ex. A, 1:15–1:55.

- Ms. LaFrance reported to Deputy Pritchett that about a month ago, Plaintiff informed an individual that customers of Ruthie's would come to Plaintiff's establishment and use her bathroom. Her name was saved. Ex. A, 1:55–2:45.

- Ms. LaFrance reported to Deputy Pritchett that, on July 20, 2025, that Plaintiff informed customers that the locals do not come into eat because the food is terrible, and that the only people who come there are traveling through there go, get diarrhea,

8

blow up her bathroom, and get food poisoning. The male left his name and number. Ex. A, 2:45–4:00; Ex. B, Deputy Pritchett Body Cam, Victim, 3:40–6:15.

- Ms. LaFrance reported to Deputy Pritchett that Plaintiff would give Steve LaFrance, the owner of Ruthie's, the middle finger and scream, "Fuck you, Steve!" just last week and that Plaintiff would scream across the street and call Ms. LaFrance a fat bitch (last time four months ago) as a weekly occurrence causing her to call police previously. Ex. A, 4:00–6:10; Ex. B, 7:29–8:05.

- Deputy Pritchett obtained the names of witnesses from Ms. LaFrance. Ex. B, 2:30–3:40.

- Ms. LaFrance informed Deputy Pritchett as a manager and employee of Ruthie's, Ms. LaFrance was "really upset" by this; that "all" of her employees were "upset" about this; that it is a "financial struggle" and that it is bad for business and the town; and the incident from the date of the incident caused Ms. LaFrance emotional distress and caused her adrenaline to be going; and that Ms. LaFrance wanted to press charges. Ex. B, 5:18–8:40; *see also* Ex. D, Deputy Carl Smith's Body Cam, 0:00–4:25.

- Plaintiff admitted to Deputies Pritchett and Smith that she told individuals on July 20, 2025, should not go to Ruthie's or they would get diarrhea; that she had five vendors sick twenty-four or thirty-six hours from eating at Ruthie's, which was just last Friday; Plaintiff claimed two females next door had it twice. Ex. C, Deputy Pritchett Body Cam, 0:00–2:17.

- Plaintiff informed Deputies Pritchett and Smith of two witnesses, but that she had not had problems when she ate at Ruthie's. Ex. C, 2:17–5:08.

9

- Plaintiff informed Deputies Pritchett and Smith she repeatedly had to clean her bathroom, it pertained to diarrhea, and that she watched people leave Ruthie's and come to her business. Ex. C, 5:08–6:10.

- A phone number Plaintiff provided to Deputies Pritchett and Smith was the incorrect number. Ex. C, 6:10–9:13; Ex. D, 10:25–13:10 (Nathan answered).

- When Plaintiff called a witness, the witness stated on speaker phone before Plaintiff, Deputy Pritchett, and Deputy Smith, that the witness and her sister was sick a month or two ago. Ex. C, 6:59–9:25.

- Plaintiff stated she had not talked to Steve for at least three months. Ex. C, 9:25–9:50.

- Plaintiff was Mirandized and placed under arrest for harassment. Ex. C, 10:52–11:39.

- Plaintiff stated she was going to sue "you." Ex. C, 12:14–12:16.

- Ms. LaFrance stated to Deputy Smith that Mr. LaFrance would want to press charges. Ex. D, 28:00–29:21.

- Deputy Pritchett turned on his police vehicle's air conditioning, allowed Plaintiff to exit her handcuffs, lock her shop, and stop any cooking; and offered to drive her back to her business. Ex. C, 17:19–25:05.

- Deputy Pritchett reported mileage of 69,999.1 when departing for the Owensville Police Department, 70,006.5 upon arrival, and 70014[2] upon return to Plaintiff's business. Ex. C, 25:05, 35:35, 1:00:00.

---

[2] Plaintiff alleged she was taken to the Owensville Police Department from her business in Rosebud (Doc. 1, ¶ 6), however, this Court may take judicial notice (*see, e.g.*, *Hartman v. United States*, 538 F.2d 1326, 1346 (8th Cir. 1976)) that the distance between Rosebud and Owensville is not twenty-seven miles. Regardless, this fact is inconsequential to qualified immunity.

- Deputy Pritchett stated to Plaintiff that he would be "more than happy" to provide return transportation to her shop and did not compel her to do so, and disagreed with Plaintiff's self-depreciating comment about her looks. Ex. C, 44:18–47:30.

"A person commits the offense of harassment in the first degree if he or she, without good cause, engages in any act with the purpose to cause emotional distress to another person, and such act does cause such person to suffer emotional distress." RSMo § 565.090. Based on the reports to the deputies and conflicting information from Plaintiff, they *at least* had *arguable* probable cause to arrest Plaintiff. Plaintiff appears to argue that the emotional distress caused to Ruthie's employees is not significant. Doc. 1, ¶¶ 39; *see also id.* at 40 (referencing prior version of statute). However, Plaintiff's reference to the earlier version is immaterial, as the reference to activity which frightens and intimidates was a portion of the statute amended in 2014. A reasonable officer absolutely had at least arguable probable cause to believe the emotional distress described by Ms. LaFrance on her behalf and on behalf of her father constituted "something markedly greater than the level of uneasiness, nervousness, unhappiness, or the like which are commonly experienced in day-to-day living." RSMo § 565.002(7). Ms. LaFrance reported multiple occurrences, screaming, and disruption which at least arguably reached the levels of all of her employees and potentially generations in her family—beyond distress commonly experienced in day-to-day living. *See supra*.

As Defendant Pritchett had arguable probable cause to arrest Plaintiff, qualified immunity bars Count I against Defendants. In addition, As Defendant Smith did not arrest, detain, transport, or book Plaintiff, the law was not clearly established on July 25, 2025, that he could be found to have seized Plaintiff under the Fourth Amendment.

   **B. Plaintiffs' claims in Count II (False Imprisonment) should be dismissed based on failure to state a claim and official immunity.**

11

Plaintiff alleged she was falsely imprisoned / arrested.[3]

The issue of probable cause for the arrest of a person is a mixed question of law and fact, and if the evidence is not conflicting, the questions is one of law. *Joseph v. Allen*, 712 F.3d 1222, 1229 (8th Cir. 2013) (internal citations omitted) (applying Missouri law). Given the lack of dispute based on what the videos show, the existence of probable cause defeats Plaintiff's claim. *See supra*.

Further, an arrest is a discretionary act whereby Defendants are entitled to official immunity. *Blue v. Harrah's N. Kan. City, LLC*, 170 S.W.3d 466, 479 (Mo. App. W.D. 2005). Plaintiff's allegations of malice are not only conclusory, which should not be considered (*Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)), but the video blatantly contradicts such a claim. *See Blue*, 170 S.W.3d at 479 (defining malice) (internal citation omitted). Neither Missouri state[4] nor federal courts applying Missouri law[5] allow a plaintiff to assert legal conclusions of bad faith or malice to circumvent official immunity. Not only was it within Defendant Pritchett's scope to arrest Plaintiff, but his uncuffing her, allowing her to lock her business and take care of her home, as well as his comments to her and his transportation back to the business provide no evidentiary basis whatever for any assertion of bad faith or malice. *See supra*.

Plaintiff's claim of false arrest is barred based on probable cause and official immunity bars claims against both officers (additionally, Deputy Smith is entitled to dismissal because he did not arrest Plaintiff, and the video blatantly contradicts any factual assertions to the contrary).

**C. Plaintiffs' claims in Count III (First Amendment) should be dismissed based on qualified immunity.**

---

[3] False arrest and false imprisonment are the same claim under Missouri law. *Highfill v. Hale*, 186 S.W.3d 277, 280 (Mo. banc 2006).
[4] *State ex rel. Love v. Cunningham ex rel. Ludwick*, 689 S.W.3d 489, 497 (Mo. banc 2024); *Forester v. May*, 671 S.W.3d 383, 387 (Mo. banc 2023).
[5] *See, e.g.*, *Winters v. Cardarella*, No. 4:19-cv-1034-JAR, 2020 U.S. Dist. LEXIS 240019, at *21 (W.D. Mo. Dec. 21, 2020); *McGraw v. Marshall Pub. Sch. Dist.*, No. 09-00066-CV-W-GAF, 2009 U.S. Dist. LEXIS 148283, at *11 (W.D. Mo. Aug. 18, 2009) (internal citations omitted).

Plaintiff alleged she engaged in constitutionally protected activity "by informing third parties of incidents of gastrointestinal difficulties after eating at [Ruthie's]." Doc. 1, ¶ 62.

"Like a Fourth Amendment claim for a wrongful arrest, a First Amendment retaliatory arrest claim is defeated by a showing of probable cause (or arguable probable cause). *Just*, 7 F.4th at 768 (internal citation omitted) (discussed *supra*).

Here, just as the officers were entitled to qualified immunity for Just's First Amendment retaliation claim, Defendants are entitled to qualified immunity based on arguable probable cause. *See supra*, Section IV.A. In addition, Deputy Smith is entitled to qualified immunity as the law was not clearly established on July 20, 2025, that his actions constituted any arrest or retaliation sufficient to violate any First Amendment right of Plaintiff.

**D. Plaintiffs' claims in Count IV (Intentional Infliction of Emotional Distress) should be dismissed as it is subsumed into her claim for false arrest, based on official immunity, and for failure to state a claim.**

Official immunity may apply to claims of intentional infliction of emotional distress at the pleadings stage. *See Sanchez v. City of Branson*, No. 6:25-cv-03179-MDH, 2025 U.S. Dist. LEXIS 202302, at *11 (W.D. Mo. Oct. 14, 2025). For the reasons stated *supra* in Section IV.B, official immunity bars Count IV.

"[I]n Missouri, a claim for intentional infliction of emotional distress will not lie when the action amounts to a traditional tort and was not intended to cause extreme emotional distress to the victim." *White v. Dulany*, No. 2:21-cv-04103-MDH, 2021 U.S. Dist. LEXIS 179639, at *25 (W.D. Mo. Sep. 21, 2021) (citing *Diehl v. Fred Weber, Inc.*, 309 S.W.3d 309 (Mo. App. E.D. 2010)). As Plaintiff's claim, if any, is based on the tort of false arrest, this Count must be dismissed.

Plaintiff also fails to allege each and every element of a claim of intentional infliction of emotional distress against *each* Defendant. "In Missouri, to state a claim of intentional infliction

13

of emotional distress, a plaintiff must plead: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; and (3) the conduct caused severe emotional distress resulting in bodily harm." *Diehl*, 309 S.W.3d at 321 (internal citation omitted). Plaintiff's allegations regarding these elements are not only legal conclusions, but the video blatantly contradicts any intentional or reckless acts—so outrageous in character and so extreme in degree that it is beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized society—which caused emotional distress resulting in bodily harm. *See id.*; *see also Bradney v. Cedar Cty. Sheriff's Dep't*, No. 6:24-cv-03263-MDH, 2025 U.S. Dist. LEXIS 208764, at *16 (W.D. Mo. Oct. 23, 2025) (finding failure to sufficiently allege claim resulted in dismissal).

Accordingly, this Court should dismiss Count IV.

### V.   CONCLUSION

WHEREFORE, Defendants respectfully request that this Court enter an Order dismissing Plaintiff's Complaint against Defendants, or alternatively, staying the matter, and for such further relief consistent with the above, and what other relief this Court deems just and proper.

    /s/ Robert T. Plunkert
Robert T. Plunkert  #62064MO
PITZER SNODGRASS, P.C.
Attorney for Defendants Deputy Connor
Pritchett and Deputy Carl Smith in their
individual capacities
100 South Fourth Street, Suite 400
St. Louis, Missouri 63102-1821
(314) 421-5545
Email: plunkert@pspclaw.com

      I hereby certify that a copy of the foregoing filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following or U.S. mail for parties not registered with CM/ECF, on this 12th day of December, 2025:

Sam J. Alton
Clayton L. Dowd
Douglas P. Dowd
DOWD & DOWD, P.C.
211 North Broadway, 40th Floor
St. Louis, Missouri 63102
Phone: 314-621-2500
sam@dowdlaw.net
clayton@dowdlaw.net
doug@dowdlaw.net
*Attorneys for Plaintiff*

        /s/ Phillip B. Schatz