UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEBRA THORSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 4:25-CV-01661-JMB |
| ) | |
| DEPUTY CONNOR PRITCHETT, et al. ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT DEPUTIES CONNOR PRITCHETT AND CARL SMITH'S
MOTION TO STAY OR DISMISS**

COMES NOW Plaintiff Debra Thorson, and for Plaintiff's Memorandum in Opposition to Defendant Deputies Connor Pritchett and Carl Smith's Motion to Stay or Dismiss, states as follows:

**I.     LEGAL STANDARD.**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009). Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id*. at 679. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* A district court must accept the allegations contained in the complaint as true, and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004).

1

**II.     *YOUNGER* ABSTENTION DOES NOT APPLY WHERE NO PARALLEL STATE CRIMINAL PROCEEDINGS ARE PENDING AND THEREFORE DEFENDANTS ARE NOT ENTITLED TO A STAY OF THESE PROCEEDINGS AS A MATTER OF LAW.**

Defendants argue that the Court should stay this action based on the "*Younger* principle" pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). This argument has no basis in the law under the circumstances of this case because no parallel state criminal case is pending and no parallel case was pending at the time Plaintiff's Complaint was filed.

Plaintiff has alleged that no summons was issued to Plaintiff in relation to her arrest, and that if there were any charges, they have been abandoned or dismissed. *See* Complaint, para. 43. In response, Defendants do *not* allege the existence of pending criminal charges against Plaintiff. Instead, Defendants suggest that there may be a "likely" prosecution and the Court should stay Plaintiff's claim until the three-year statute of limitations for felony harassment has run on the chance that such charges may be brought in the future, even though no criminal charges have been brought for more than six months. Defendants do not cite a *single* case in which the *Younger* abstention was found to be appropriate in the absence of pending state criminal proceedings and based solely on the possibility that a parallel state proceeding might exist in the future.[1]

The failure to allege the existence of pending state criminal proceedings is fatal to Defendants' *Younger* argument, because this is a minimum requirement for abstention. The Eighth Circuit has recently stated: "The requisite 'exceptional circumstances' [for *Younger* abstention] are limited to three types of state civil and criminal proceedings: (1) '**pending state criminal prosecutions**', (2) certain 'civil enforcement proceedings' warranting abstention, and (3) 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *375 Slane Chapel Road, LLC v. Stone Cnty., Missouri*, 53 F.4th 1122, 1125–26 (8th Cir.

---

[1] Should the state decide to file criminal charges against Plaintiff, those charges would be frivolous as will be demonstrated in this memorandum.

2

(Mo.) 2022). [Emph. suppl.] *See also Abusaid v. Hillsborough Cnty. Bd. of Cnty. Com'rs*, 405 F.3d 1298, 1315 n.9 (11th Cir. 2005)(noting that application of *Younger* abstention is "**clearly erroneous**" where there are no state criminal proceedings pending at the time federal suit is filed); *Phelps-Roper v. Heineman*, 710 F.Supp.2d 890, 904 (D.Neb. 2010)(*Younger* abstention did not apply to funeral protestor's claims challenging constitutionality of funeral picketing law where no charges were brought under that statute against protestor in state court); *Cain v. City of New Orleans*, 186 F.Supp.3d 536, 551 (E.D.La. 2016)("None of the plaintiffs is currently subject to criminal charges in state-court. Therefore, there are no ongoing state judicial proceedings and abstention under *Younger* is not warranted here.")

The Supreme Court has expressly held that, "***Younger* abstention has no application in the absence of pending criminal charges**. Requiring the federal courts totally to step aside when no state criminal prosecution is pending against the federal plaintiff would turn federalism on its head." *Steffel v. Thompson*, 415 U.S. 452, 472 (1974). [Emph. suppl.] "When no state criminal proceeding is pending at the time the federal complaint is filed, federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system; nor can federal intervention, in that circumstance, be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles." *Id.* at 462. Plaintiff Thorson respectfully submits that the Supreme Court's opinion in *Steffel* defeats the Deputy Sheriffs Defendants' *Younger* abstention argument as a matter of law and therefore Defendants' motion for stay should be denied.

**III.    DEFENDANTS' MOTION TO DISMISS FAILS AND SHOULD BE DENIED.**

    **A.    COUNT I - § 1983 FALSE ARREST – NO QUALIFIED IMMUNITY.**

The Deputies have asserted qualified immunity as a basis for dismissal [Defs.' Memo., p. 5]. When evaluating a claim of qualified immunity, "The threshold question is whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officials' conduct

3

violated a constitutional right. If we find a constitutional violation, we ask whether that right was clearly established." *James ex rel. James v. Friend*, 458 F.3d 726, 731 (8th Cir. 2006). "A right is 'clearly established' when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Whisman Through Whisman v. Rinehart*, 119 F.3d 1303, 1309 (8th Cir. (Mo.) 1997). The Eighth Circuit has held that "In determining whether the legal right at issue is clearly established, this circuit applies a flexible standard, requiring some, but not precise factual correspondence with precedent, and demanding that officials apply general, well-developed legal principles." *Whisman*, 119 F.3d at 1309, citing *J.H.H. v. O'Hara,* 878 F.2d 240, 243 (8th Cir. 1989). Qualified immunity will only apply where an official's "conduct was objectively legally reasonable in light of the information they possessed at the time of the alleged violation." *James ex rel. James v. Friend*, 458 F.3d 726, 730 (8th Cir. 2006).

The Eighth Circuit has further held that "**qualified immunity is an affirmative defense, which will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint**." *Whisman v. Rinehart,* 119 F.3d 1303, 1309 (8th Cir. 1997). This is why qualified immunity is usually raised by a motion for summary judgment after discovery has been conducted. *See Id*. When engaging in the analysis of a qualified immunity defense on the face of complaint on a motion to dismiss, "[t]he balance favors the plaintiffs." *Benson v. City of Lincoln*, 2019 WL 1766159, at *9 (D.Neb. 2019), quoting *Whisman*, 119 F.3d at 1309.

The Deputy Defendants assert that qualified immunity exists because the deputies purportedly had "arguable probable cause" to arrest Plaintiff for felony harassment based on the facts set forth in the Complaint *and* based on body camera footage recorded by the deputies during Plaintiff's arrest.[2]

Missouri's felony harassment statute § 565.090 RSMo provides that "A person commits the offense of harassment in the first degree if he or she, without good cause, engages in any act with the

---

[2] Plaintiff believes that the body camera video fully supports her claims in all respects.

4

purpose to cause emotional distress to another person, and such act does cause such person to suffer emotional distress." "Emotional distress" is further defined by § 565.002 RSMo as "something markedly greater than the level of uneasiness, nervousness, unhappiness, or the like which are commonly experienced in day-to-day living[.]" Plaintiff will show there was no probable cause for her arrest and imprisonment, "arguable" or otherwise, to support her arrest under these Missouri statutes.

"Arguable" probable cause for an arrest exists where the officer's belief that he or she had probable cause is "objectively reasonable." *Ryno v. City of Waynesville*, 58 F.4th 995, 1006 (8th Cir. (Mo.) 2023). The touchstone for probable cause is that the police officer possessed "reasonably reliable information that the suspect has committed a crime." *See Courtright v. City of Battle Creek*, 839 F.3d 513 (6th Cir. 2016)(Arrestee plausibly alleged violation of clearly-established constitutional right to freedom from arrest in absence of probable cause, and thus police officer was not entitled to qualified immunity on arrestee's § 1983 claim alleging false arrest, even though police received phone call identifying arrestee as individual who had emerged from his hotel room with gun and threatened to shoot another resident's dog, where phone call was placed by unidentified "other resident" who made single call to police, and there was no corroborating evidence that arrestee had committed any crime).

Under applicable federal law, Defendants' reliance on body camera video in support of their motion to dismiss is improper. Defendants cite *Holland v. City of Sikeston*, No. 1:24-cv-00201-CMS, 2025 U.S. Dist. LEXIS 190247, at *11 (E.D. Mo. Sep. 26, 2025) for the proposition that the Court can disregard facts pleaded in the Complaint and determine probable cause based on the Court's independent review of the officers' body camera video. Defendants vastly overstate the propriety of the district court's review of such evidence at the motion to dismiss stage. To the contrary, reliance on such evidence at the motion to dismiss stage is limited to a narrow exception where a plaintiff's

5

version of events is "blatantly contradicted by the record" as reflected in video of the incident. *See Ching as Trustee for Jordan v. City of Minneapolis*, 73 F.4th 617 (8th Cir. 2023).

Even at the summary judgment stage, much less on a motion to dismiss as here, where multiple inferences can be drawn from the evidence presented by a video, the Court is not entitled to draw those inferences itself but must leave them to the trier of fact. *See Pryor v. Corrigan*, 124 F.4th 475, 503 (7th Cir. (Ill.) 2024)(J. Rovner, concurring)(in reviewing trial court's reliance on video evidence for summary judgment, even where "the actual events depicted in the video may be plainly portrayed…the interpretation of, and inferences from, that evidence still must be left to a jury" and "Only in the rare case, however, will video evidence leave no room for interpretation by a fact finder)." *Holland,* currently on appeal before the Eighth Circuit, involved the question of whether a suicidal man armed with a gun presented a sufficient threat to officers to justify their use of force, and in which the video evidence blatantly contradicted the facts alleged by the plaintiff with regard to the threat presented by the subject and the officers' use of force in response. *See Holland*, 2025 U.S. Dist. LEXIS 190247, at *11.

The Deputy Defendants' claim that the video "blatantly contradicts" Plaintiff's version of events is absurd. The Deputies point to a few minor discrepancies which directly contradict their claim. For example, the Deputies state "the Incident Report reflects Plaintiff was able to call at least one person who had suffered from food poisoning after eating at Ruthie's and informed the officers of the same" and then claim this statement was false. However, the Deputies cite a portion of the video which proves that it is true. (Characterizing the video as showing that, "When Plaintiff called a witness, the witness stated on speaker phone before Plaintiff, Deputy Pritchett, and Deputy Smith, **that the witness and her sister was sick a month or two ago**"). Ex. C, 6:59–9:25. In a further attempt to prove that the video "blatantly contradicts" Plaintiff's allegations, Defendants suggest that Plaintiff was incorrect about the number of miles between Rosebud and Owensville, Missouri. The

6

number of miles between Rosebud and Owensville is obviously irrelevant and the Deputies admit it "is inconsequential to qualified immunity." Memo. in Support, p. 10. *See Bell v. Neukirch*, 979 F.3d 594, 609 (8th Cir. 2020)(rejecting a claim of qualified immunity in a Sec. 1983 false arrest case, despite officers' argument that the arrest only occurred after they carefully reviewed video of the incident before arresting the plaintiff, where the officers "ignor[ed] or overlook[e]d plainly exculpatory evidence" reflected on the video).

While Defendant Lindsey LaFrance is the individual who claimed "emotional distress" from Plaintiff's statements regarding Ruthie's food, the Deputies' summary of the "probable cause evidence" does not reference such a statement being made by Plaintiff to Defendant LaFrance or that such a statement was intended to cause her emotional distress.[3] Instead, Ms. LaFrance claims that she was upset by statements made to her by *third parties* that are obvious hearsay. The video also shows that Ms. LaFrance was not suffering any emotional harm much less the emotional harm described in § 565.090 RSMo. Plaintiff respectfully submits that the "facts" in Deputies argumentative claim that Ms. LaFrance was "upset" was because Plaintiff's statements to third parties were causing a "financial struggle" and were "**bad for business and the town.**" [Memo. in Support at 9.] There is no possibility that a reasonable officer would believe he or she had probable cause to arrest Plaintiff Thorson for "financial harm" to a business based on truthful statements to third parties.

Rather than "blatantly contradicting" the facts set forth in Plaintiff's Complaint, the video forcefully supports Plaintiff's claims that she was falsely arrested and that her false arrest was instigated by Steve and Lindsey LaFrance. The video also shows that Ms. LaFrance was not suffering from any emotional distress but that she perceived Plaintiff's statements to be "bad for business and the town," and that it was this, and not Plaintiff's claimed intent to cause emotional distress, which

---

[3] The audio of the Deputies initial interview of Ms. LaFrance demonstrates multiple instances where the Deputy asked Ms. LaFrance if she had suffered emotional distress and the Deputy even said "I don't want to put words in your mouth" even while he was doing so. [Ex. D to MTD, Deputy Carl Smith's Body Cam: 1:00-5:00.]

was the actual motivation for Plaintiff's false arrest. Moreover, the Deputies cite no legal authority whatsoever for the proposition that statements made to third parties about the quality of food at a restaurant could ever constitute *felony harassment* under Missouri law. As addressed more fully with regard to Count III for First Amendment retaliation, these alleged statements are clearly protected free speech that could not conceivably give law enforcement the right to make an arrest. In other words, reasonable officers in the Deputies' position would have known that statements of opinion about the quality of food at a restaurant, and statements to third parties of such an opinion that a restaurant's food could cause illness, are protected First Amendment speech which could not support probable cause for an arrest under any circumstances. *See Quraishi v. St. Charles Cnty., Missouri*, 986 F.3d 831 (8th Cir. 2021); *Nieters v. Holtan*, 83 F.4th 1099, 1107 (8th Cir. 2023).

In addition, the Deputies have not shown that the video is a complete record of all information known to the officers regarding the situation between Plaintiff Thorson and the LaFrances at the time that Plaintiff was arrested. There are multiple instances in the videos where the Deputies intentionally muted the audio which could very well amount to evidence of spoliation under Missouri law. *See Hill v. SSM Health Care St. Louis*, 563 S.W.3d 757 (Mo. Ct. App. 2018). The Deputies' improper reference to the video on a motion to dismiss is a transparent attempt to create a scenario in which the Court will act as the trier of fact, rather than acting as the arbiter of the applicable law and its application to the facts as pleaded. As indicated, Plaintiff Thorson believes the video and the existing audio fully supports all of her claims in the Complaint because Plaintiff is entitled to the benefit of all reasonable inferences at the motion to dismiss stage.[4]

The Deputies claim that Ms. LaFrance suffered legally cognizable emotional distress is equally without merit. In interpreting the requirement of showing emotional distress that is "markedly

---

[4] Notably, the Deputies' qualified immunity argument is completely devoid of any citation to case law supporting probable cause for a violation of § 565.090 RSMo and § 565.002(7) RSMo under anything resembling the facts in this case, i.e. felony harassment for statements made to third parties about a restaurant's food.

8

greater than the level of uneasiness, nervousness, unhappiness or the like which are commonly experienced in day-to-day living," Missouri courts have clarified that "**Conduct that merely causes alarm or distress to the victim but would not cause substantial emotional distress to a reasonable person does not qualify as harassment**." *C.B. v. Buchheit,* 254 S.W.3d 210, 213 (Mo.App. E.D. 2008). The court in *Buchheit* addressed this same "markedly greater" language defining emotional distress under Missouri law in an order of protection proceeding for claimed adult abuse. In *Buchheit*, the plaintiff claimed that she has sustained statutory emotional distress where the defendant had:

> called [victim] explicit names, put negative comments about her on the internet, threatened to have her daughter taken away, threatened to sue her, refused to leave her property on one occasion until escorted by the police, boxed up all her belongings in her and her husband's apartment on another occasion, and brought people Victim did not know with her when she would pick up Victim's daughter and would utter rude comments under her breath.
>
> *Id.* at 212.

The court held that "Although Victim testified that Buchheit's conduct caused her fear of danger of physical harm, such fear was unreasonable. There was no evidence to support Victim's claim of fear of physical harm…while the relationship between Victim and Buchheit was clearly tense, Victim failed to present evidence that she actually suffered something markedly greater in order to be considered substantial emotional distress." *Id.* at 213.

There is no Missouri case law where felony harassment has ever been found in circumstances resembling the situation before the Court. *See State v. Wooden*, 388 S.W.3d 522, 526 (Mo. 2013)(conviction for felony harassment upheld where defendant sent email to alderwoman mentioning dusting off a sawed-off shotgun, referring to himself as a domestic terrorist, and referring to presidential assassination, the murder of a federal judge, and the shooting of a congresswoman, and likening the victim to a biblical character who was eaten by dogs); *State v. Harmon*, 719 S.W.3d

158, 163 (Mo.App. E.D. 2025)(conviction for felony harassment upheld where defendant came into house unannounced, threatened to kill complainants, including a mother holding her baby, threatened to burn their house down, took his shirt off and said he was Jesus and Jesse James and that "he wanted to kill someone"); *Jones v. Stange*, 2024 WL 492047, at *2 (E.D.Mo. 2024)(rejecting habeas petition from conviction for violation of Sec. 565.090 where defendant four times over multiple days threatened to kill victim at her place of employment, threatened to drag victim by her hair and pull her hair out, and stated "I should have killed you when I had the chance to").

*Ryno v. City of Waynesville*, 58 F.4th 995 (8th Cir. (Mo.) 2023), which is relied on by the Deputies for its "arguable" probable cause contention, involved a man with a lengthy history of stalking and harassing his former romantic interest, who had violated a previous order of protection, who had been charged and pleaded guilty to harassment of the victim; who was on probation for that conviction; and who was being investigated yet again for violating an order of probation at the time of the search and detention at issue. *Id.* at 1000. Simply put, *Ryno* involved a victim who was threatened and terrified by a stalker for years, not a situation where a person expresses an opinion about the quality of a restaurant's food to third parties and the restaurant's owners are offended.

The Deputies also cite *Just v. City of St. Louis*, 7 F.4th 761 (8th Cir. 2021), a case in which the court found qualified immunity (at the summary judgment stage) based on a finding that the officers had probable cause to arrest the plaintiff for assault. However, in *Just* it was undisputed that the arresting officers had been told by the victim that the arrestee had *chased him with a knife*, and a third party had confirmed that story. *Id.* at 767-768. Obviously, the facts in *Just* do not remotely resemble the facts in this case.

Finally, the Deputies argue, in a conclusory single sentence, that because "Defendant Smith did not arrest, detain, transport, or book Plaintiff, the law was not clearly established on July 25, 2025, that he could be found to have seized Plaintiff under the Fourth Amendment." This conclusory

10

argument should be disregarded by the Court: it is well-established that an officer who "supports" another officer in carrying out an arrest may be subject to a claim of false arrest, even where they do not carry out the arrest itself. *See Lechner v. LVMPD*, 696 F.Supp.3d 963, 992 (D.Nev. 2023)("it does not matter whether Defendant O'Connell issued the citation, he knew or should have known that his conduct would cause Plaintiff to be cited without probable cause"). Plaintiff submits that this is not a qualified immunity issue that should be resolved on a motion to dismiss.

For all of the reasons set forth above, the Deputies have not shown that they are entitled to qualified immunity and their Motion to Dismiss Count I for False Arrest should therefore be denied.

    **B.**    **COUNT II - FALSE IMPRISONMENT – MISSOURI LAW.**

The Deputies contend that because they had probable cause for Plaintiff's arrest, they therefore also had probable cause for Plaintiff's imprisonment as a matter of law. Plaintiff herewith adopts by reference all of her arguments and citations contained in section IIA set forth above regarding Defendants' lack of probable cause. Defendants' argument fails for the same reasons as to Count II.

The Deputies next contend that official immunity under state law applies because there is "no evidentiary basis whatever for any assertion of bad faith or malice" by the Deputies. [Defs. Memo. in Supp., p. 12.] This contention is also without merit. Plaintiff's allegations of bad faith and malice are not "conclusory" at all: Plaintiff has specifically alleged that the Deputies arrested the Plaintiff "in retaliation for the exercise of her protected speech." See Complaint, para. 59. The other facts alleged in the Complaint, together with their reasonable inferences, support Plaintiff Thorson's claim that she was not arrested because of "felony harassment" by knowingly causing Ms. LaFrance emotional distress, but because Ms. LaFrance believed Plaintiff's protected speech was bad for business and bad for "the town." These allegations support Plaintiff's claim that the Deputies maliciously, intentionally and in bad faith violated her first amendment rights when they falsely arrested and imprisoned her.

11

Missouri courts apply the malice exception to official immunity in false arrest cases. *See Blue v. Harrah's North Kansas City, LLC*, 170 S.W.3d 466, 479 (Mo.App. W.D. 2005). In *Blue*, the court held that disputed questions of fact existed for summary judgment purposes regarding the malice exception where there were disputed facts on whether the arresting officer had probable cause, or whether plaintiff was arrested in retaliation for suspicious behavior and "belligerence." See Id. The court concluded "A jury should be given an opportunity to consider all the evidence that both sides can present and decide whether or not Officer Sweiger acted in bad faith or with malice when he arrested Mr. Blue." Id. at 480. The same is true here. A jury should be given the opportunity to consider all of the evidence regarding the Deputies' bad faith or malice when they arrested Debra Thorson. For all of the foregoing reasons, Count II should not be dismissed.

### C. COUNT III – RETALIATION FOR FIRST AMENDMENT SPEECH IS A CONSTITUTIONAL VIOLATION IN AND OF ITSELF

The Deputies again rely solely on qualified immunity in seeking dismissal of Count III because, according to the Deputies, they had "arguable" probable cause to arrest Plaintiff Thorson. For all of the reasons previously set forth in sections II A and II B, Plaintiff submits that the Deputies did not have probable cause to arrest Plaintiff. Furthermore, the Deputies are not entitled to qualified immunity, on the face of the pleadings, because the law is clearly established that using an arrest to interfere with First Amendment rights is a constitutional violation.

"Speech is often provocative and challenging.... [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987). [Cit. omit.] Expressive conduct warranting First Amendment protection exists where there is "[a]n intent to convey a particularized message" and where "in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it." *Spence v. Washington*, 418 U.S. 405, 410–411 (1974). Here Plaintiff had experienced

12

an adverse reaction to the food she ate at Ruthie's. Other people told her that they had had the same experience. Plaintiff told *third parties* about her experience and other customers' experiences following ingestion of food at Ruthie's Restaurant. As previously indicated, there is no Missouri law that speech of this type constitutes felony harassment and being arrested in retaliation for this speech was clearly a violation of Plaintiff's constitutional right to free speech.

In *Quraishi v. St. Charles Cnty., Missouri*, 986 F.3d 831 (8th Cir. 2021), news reporters who covered a protest following a police-involved shooting brought a § 1983 action against a deputy, alleging that the officer fired tear-gas at them while they were preparing for a live broadcast, in violation of their First and Fourth Amendment rights. The officer claimed that he had probable cause for the use of force based on his belief that the reporters were engaged in an unlawful assembly and violated dispersal orders. *Id.* at 837. The Eighth Circuit disagreed and reversed summary judgement, stating that there were disputed questions of fact as to whether the officer had used the tear gas to retaliate against the reporters, and *that it is clearly established that using an arrest to interfere with First Amendment activity is a constitutional violation*. *See Id.* at 839. [Emph. suppl.] *See also Nieters v. Holtan*, 83 F.4th 1099, 1107 (8th Cir. 2023)(disputed questions of fact existed as to whether officer lacked even "arguable" probable cause to arrest journalist for failure to disperse, barring summary judgment based on qualified immunity); *Baribeau v. City of Minneapolis*, 596 F.3d 465 (8th Cir. 2010)(Police officers were not entitled to qualified immunity for arresting suspects without probable cause for violation of Minnesota's misdemeanor disorderly conduct statute based on suspects' protected expressive conduct); *Lechner v. LVMPD*, 696 F.Supp.3d 963, 994 (D.Nev. 2023)(summary judgment based on qualified immunity denied in false arrest case "where jury could find that Plaintiff's [protected] conduct street performing was the but-for cause of Defendants Owensby and O'Connell's conduct" in arresting the plaintiff).

13

Finally, Defendants' argument that "arguable probable cause" is sufficient to establish qualified immunity is subject to an important exception in First Amendment retaliation cases "where officers have probable cause to make arrests, but typically exercise their discretion not to do so. In such cases, an unyielding requirement to show the absence of probable cause *could pose a risk that some police officers may exploit the arrest power as a means of suppressing speech*." *Nieves v. Bartlett*, 587 U.S. 391, 406 (2019). [Emph. suppl.] That is exactly what happened on July 20, 2025 when Debra Thorson was falsely arrested and imprisoned. The Deputies, as demonstrated by the video and the audio and the other evidence alleged in the Complaint, arrested Debra Thorson in order to suppress her constitutionally protected speech regarding what happened to her and others after eating at Ruthie's. For all of the foregoing reasons, Defendants' motion to dismiss Count III should be denied.

### D.  COUNT IV - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Finally, Defendants challenge Plaintiff's Count IV - Intentional Infliction of Emotional Distress on the basis of: (1) official immunity, and (2) the emotional distress claim is "subsumed" into Plaintiff's false arrest/imprisonment claims.

Defendants' official immunity defense cannot prevail on the face of the pleadings because Plaintiff has properly alleged the malice exception, for all of the reasons set forth in section II A, II B and II C which are incorporated herein by reference.

In addition, Count IV – Intentional Infliction of Emotional Distress cannot be "subsumed" by Plaintiff's false arrest claim because Count I is a statutory claim pursuant to § 1983, and is therefore not a "traditional tort" under Missouri law. And Count IV is not subsumed by Plaintiff's Count II claim for false imprisonment claim under Missouri law because Plaintiff has specifically alleged the Defendants intended to cause emotional distress:

14

> [W]here [a defendant's] conduct amounts to the commission of one of the traditional torts, such as battery, **and the conduct was not intended only to cause extreme emotional distress to the victim**, the tort of intentional emotional distress will not lie, and recovery must be had under the appropriate traditional common-law action.

*State ex rel. Halsey v. Phillips*, 576 S.W.3d 177, 181 (Mo. 2019).

In *Halsey,* the Court held that where conduct is alleged to be intended to cause emotional distress, it is not merely a "repackaged" other tort claim and is not subsumed in another claim. *See Id.* Plaintiff has specifically alleged that "Defendants, by wrongfully arresting Plaintiff Thorson, and in making false claims/reports and/or instigating the arrest and detention of Plaintiff acted intentionally and recklessly. The Defendants either intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of their conduct." These allegations are sufficient to allege a separate cause of action for intentional infliction of emotional distress as distinct from Plaintiff's causes of action for wrongful arrest and wrongful imprisonment.

WHEREFORE Plaintiff respectfully requests that the Court make and enter its Order denying Defendants' Motion to Stay or to Dismiss, and for any other and further relief the Court deems just and proper, the premises considered.

                                                    Respectfully submitted,

                                                    DOWD & DOWD, P.C.

DATED: December 29, 2025            BY:    */s/ Clayton L. Dowd*
                                                              SAM J. ALTON, (48574MO)
                                                              sam@dowdlaw.net
                                                              CLAYTON L. DOWD, (72772MO)
                                                              clayton@dowdlaw.net
                                                              DOUGLAS P. DOWD, (29240MO)
                                                               doug@dowdlaw.net
                                                              ALEX R. LUMAGHI (56569MO)
                                                              alex@dowdlaw.net
                                                              211 North Broadway, 40th Floor
                                                              St. Louis, MO  63102
                                                              (314) 621-2500

                                                              *Attorneys for Plaintiff Thorson*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 29, 2025, the foregoing was served on all counsel of record via this Court's e-filing system.

*/s/ Clayton L. Dowd*