UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DEBRA THORSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 4:25-CV-01661-JMB |
| | ) | |
| DEPUTY CONNOR PRITCHETT, et al., | ) | **TRIAL BY JURY DEMANDED** |
| | ) | |
| Defendant. | ) | |

# *DEFENANTS DEPUTIES CONNOR PRITCHETT AND CARL SMITH'S REPLY IN SUPPORT OF THEIR MOTION TO STAY OR DISMISS*

COME NOW, Defendants Gasconade County, Missouri, Sheriff's Deputies Connor Pritchett and Carl Smith in their individual capacities ("Defendants"), and for their Reply in Support of Their Motion to Stay and/or Dismiss under Rule 12(b)(6),[1] state:

## *I. INTRODUCTION*

On December 29, 2025, Plaintiff filed her Memorandum in Opposition to Defendants' Motion to Stay or Dismiss. Doc. 19. Defendants avoid repeating arguments previously raised in their Memorandum in Support of Their Motion to Dismiss (Doc. 10) and respond to arguments in the order raised by Plaintiff.

## *II. ARGUMENT*

### A. Due to the likelihood of criminal prosecution, this matter should be stayed under *Wallace v. Kato*.

[1] All references to Rules are to the Federal Rules of Civil Procedure unless otherwise noted.

Plaintiff has argued that because there is no pending, underlying criminal matter regarding an arrest taking place on July 20, 2025, the matter should not be stayed. Plaintiff argues Defendants have not cited any case showing a stay would be proper in the absence of a criminal proceeding.

Defendants, in their Memorandum in Support, cited a quote referencing *Wallace v. Kato*, 549 U.S. 384, 392 (2007), including the following pertinent language from *Wallace*: ". . . until the criminal case *or the likelihood of a criminal case has ended*." *See* Doc. 10, pp. 3–4 (emphasis added). The U.S. Supreme Court's inclusion of this italicized language does not confine discretion of a trial court to stay proceedings to matters *only* where charges have been filed; it specifically expands a court's discretion beyond it. *Wallace* focuses on abstention under *Heck v. Humphrey*, 512 U.S. 477, 488 (1994) (discussing preventing a suit raised under 42 U.S.C. § 1983 from implying the invalidity of a conviction or sentence). Courts have used discretion to issue stays regarding potential criminal prosecutions even before *Wallace* was decided. *See*, *e.g.*, *Baranski v. Fifteen Unknown Agents of ATF*, 195 F. Supp. 2d 862, 870 (W.D. Ky. 2002) ("the government's interest in preventing a potential criminal defendant from exploiting the advantages of civil discovery").

Here, the issue is not interference with ongoing proceedings (at this time), it is the intertwinement of probable cause on the likelihood of criminal charges to be raised against Plaintiff. *Younger* is not controlling in this regard, nor does it speak directly to the issues raised in *Heck* / *Wallace* and, say, if a state court indictment is later issued (showing probable cause) directly bearing on Plaintiff's claims based on lack of probable cause. *See Zike v. Advance Am., Cash Advance Centers of Missouri, Inc.*, 646 F.3d 504, 510 (8th Cir. 2011) ("Accordingly, only the Missouri court's probable cause determination at Zike's preliminary hearing may serve as prima facie evidence of Advance America's probable cause."). Further, any conviction of a charge of

felony harassment would be conclusive evidence of probable cause, thereby "prevent[ing] him from proving both that the [stop] and arrest were not supported by probable cause. . ." *Carrick v. Freeman*, 709 Fed. Appx. 409, 410 (8th Cir. 2018) (citing several cases).

As probable cause is a central issue in this case, a state court criminal prosecution is sufficiently intertwined with the issues in this case whereby a stay should be issued.

**B. Plaintiff's claims in Count I should be dismissed based on qualified immunity.**

Plaintiff has emphasized language from *Whisman v. Rinehart*, 119 F.3d 1303, 1309 (8th Cir. 1997) that qualified immunity is usually raised in connection with a motion for summary judgment. This, however, must be couched based on controlling holdings by the U.S. Supreme Court:

- "For this reason, both the Supreme Court and our court 'repeatedly have stressed the importance of resolving [qualified] immunity questions at the earliest possible stage in litigation.'" *Payne v. Britten*, 749 F.3d 697, 701 (8th Cir. 2014) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam); *O'Neil v. City of Iowa City, Iowa*, 496 F.3d 915, 917 (8th Cir.2007)).
- "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability. . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis deleted)).
- Plaintiff is required to state a claim of relief that is plausible on its face, without relying on legal conclusions, on order to overcome qualified immunity. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff disputes that this Court may consider the videos in connection with a motion to dismiss. Doc. 19, pp. 5–6. Defendants disagree, and *Holland v. City of Sikeston*, No. 1:24-cv-00201-CMS, 2025 U.S. Dist. LEXIS 190247, at *11 (E.D. Mo. Sep. 26, 2025) (the case Defendants cited) is not the sole authority (along with its cited cases) regarding this Court's review of video pertaining to a motion to dismiss. *See Ching v. City of Minneapolis*, 73 F.4th 617, 621 (8th Cir. 2023) ("Videos of an incident are necessarily embraced by the pleadings, and we will consider the videos here.") (internal citation omitted). Plaintiff relies on a concurring in part, dissenting in part, opinion in *Pryor v. Corrigan*, 124 F.4th 475, 503 (7th Cir. 2024) suggesting different interpretations of video lead to a fact issue. However, the quote Plaintiff took from *Pryor* was incomplete. The full quote is: "*More importantly, in some cases,* the actual events depicted in the video may be 'plainly portrayed,' *as the majority states, but* the interpretation of, and inferences from, that evidence still must be left to a jury. *Pryor v. Corrigan*, 124 F.4th 475, 504 (7th Cir. 2024) (Rovner, J., concurring in part) (emphasis on words omitted in Plaintiff's quote on p. 6 of Doc. 19). The majority criticized Judge Rovner, the "dissenting colleague," regarding the idea that viewing the videos usurped the jury's role. *Id.* at 490. "But most of the events that form the basis for Pryor's many claims are plainly portrayed, unobstructed and in their entirety, in one or both videos. So, neither the parties nor the district court were mistaken to consider and rely on them in the manner they did." *Id.* at 490.

Plaintiff attempts to identify some topics she believes should be left to a factfinder such as the credibility of Lindsey LaFrance. Doc. 19, pp. 7–8. The question of law is whether the deputies were objectively reasonable. *See Just v. City of St. Louis*, 7 F.4th 761, 767–68 (8th Cir. 2021). Plaintiff's disagreement, attempt to discredit Ms. LaFrance, and insistence that she be seen as credible in light of all other circumstances goes beyond the inquiry of arguable probable cause, as

such delves into the are "conduct[ing] a trial before determining to make an arrest." *Id.* at 767 (internal quotations and citation omitted)[2]

Plaintiff suggests Defendants have failed to cite to legal authority for the proposition that statements to third parties regarding the quality of food could be considered felony harassment. Doc. 19, p. 8. Defendants not only disagree (*see* Mo. Rev. Stat. § 565.090 (2016)), but it is Plaintiff who bears the burden of showing clearly established law for purposes of qualified immunity (once invoked).[3]

Plaintiff appears to emphasize the comment Ms. LaFrance referenced regarding the financial impact Plaintiff had. However, this unduly casts aside the statements of Ms. LaFrance on video regarding the distress it caused her. *See* Doc. 10, pp. 8–11. Plaintiff's comment regarding the speech should be protected by the First Amendment fails to account for the principle that freedom of speech guaranteed under the U.S. Constitution "is not absolute." *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 470 (2025) (internal citation and quotations omitted); *see also State v. Collins*, 648 S.W.3d 711, 718 (Mo. banc 2022) ("Because a defendant is required to act without good cause and with a purpose to cause emotional distress, section 565.091 as construed is limited to conduct wholly outside of the First Amendment's protection and is not overly broad. Collins' facial challenge to section 565.091 fails.").

Plaintiff contends there were periods in the video footage where audio is muted. However, Plaintiff neither alleges nor argues what she believed was stated in the muted audio which could

---

[2] *See infra* discussion regarding *Gerstein v. Pugh*, 420 U.S. 103 (1975) and *Brown v. City of St. Louis*, 40 F.4th 895 (8th Cir. 2022).

[3] *Cartia v. Beeman*, 122 F.4th 1036, 1042 (8th Cir. 2024) (citing *Quraishi v. St. Charles Cnty., Missouri*, 986 F.3d 831, 835 (8th Cir. 2021)); *see also Graham v. Barnette*, 5 F.4th 872, 887 (8th Cir. 2021); *Smith v. City of Minneapolis*, 754 F.3d 541, 546 (8th Cir. 2014); *see also Findlay v. Lendermon*, 722 F.3d 895, 900 (7th Cir. 2013) (plaintiff's failure to meet burden to show violation of clearly established law fails to defeat defense of qualified immunity); *but see Wright v. U.S.*, 813 F.3d 689, 696 (8th Cir. 2015) (internal citations omitted) (resolving issue with full knowledge of precedent).

change this Court's arguable probable cause analysis (especially where muted audio includes a conversation between deputies and one deputy concluding a conversation with Ms. LaFrance). Under *Iqbal*, more is required by way of plausibility to circumvent the protections of qualified immunity.

Plaintiff next appears to debate Ms. LaFrance's degree of distress. Doc. 19, p. 9. The direct contact, the statements to customers, the impact on her employees, that she was "really upset," and other facts contained in the video and summarized by Defendants (Doc. 10, pp. 8–11) show there was at least *arguable* probable cause and that a reasonable officer could believe, with the facts present at the time of the arrest, that her emotional distress was substantial and ongoing.

Plaintiff's reference to *C.B. v. Buchheit*, 254 S.W.3d 210, 213 (Mo. App. E.D. 2008) is unpersuasive. In *C.B.*, the Missouri Court of Appeals reversed a trial court's order of protection under the stalking statute (Mo. Rev. Stat. § 455.010 (Cum. Supp. 2006)). The *C.B.* Court did not address the issue of probable cause, let alone arguable probable cause. Rather, the Court found the applicant's contention of being "alarmed" ("fear of danger of physical harm") by the conduct was not reasonable based on the evidence adduced at trial. *C.B.*, 254 S.W.3d at 212–14; *see also* Mo. Rev. Stat. § 455.040.1(1) (Cum. Sup. 2024) (setting forth burden of proof as a "preponderance of the evidence," and if the respondent cannot show the actions were otherwise justified). As the U.S. Supreme Court has stated:

> The use of an informal procedure is justified not only by the lesser consequences of a probable cause determination but also by the nature of the determination itself. It does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt. See F. Miller, Prosecution: The Decision to Charge a Suspect with a Crime 64—109 (1969). This is not to say that confrontation and cross-examination might not enhance the reliability of probable cause determinations in some cases. In most cases, however, their value would be too

> slight to justify holding, as a matter of constitutional principle, that these formalities and safeguards designed for trial must also be employed in making the Fourth Amendment determination of probable cause.

*Gerstein v. Pugh*, 420 U.S. 103, 121–22 (1975) (internal footnotes omitted) (determining the Constitution does not require an adversary determination of probable cause); *see also Brown v. City of St. Louis*, 40 F.4th 895, 900 (8th Cir. 2022) (internal citation omitted) ("There is 'no place' in this [probable cause] analysis for '[f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence. . .'"). *Arguable* probable cause is even less demanding than probable cause. *See supra*. Regardless, this case does not place "the statutory or constitutional question beyond debate." *See White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotations and citations omitted).

Plaintiff references *State v. Wooden*, 388 S.W.3d 522, 526 (Mo. banc 2013); *State v. Harmon*, 719 S.W.3d 158, 163 (Mo. App. E.D. 2025); and *Jones v. Strange*, 2024 WL 492047, at *2 (E.D. Mo. 2024) as examples of courts affirming harassment. However, these cases support Defendants' arguments, as it shows the validity of harassment under Chapter 565, Mo. Rev. Stat. (2016), and that not all speech is constitutionally protected. These cases do not place the statutory or constitutional question beyond debate, as is Plaintiff's burden to show. *See supra*.

Plaintiff attempted to distinguish *Ryno v. City of Waynesville*, 58 F.4th 995 (8th Cir. 2023) on the grounds it involved a stalker who made threats and terrified a victim for years, rather than "express[ing] an opinion about the quality of a restaurant's food to third parties and the restaurant's owners are offended." Doc. 19, p. 10. However, this does nothing to suggest *arguable* probable cause that Plaintiff, "without good cause, engages in any act with the purpose to cause emotional

distress[4] to another person, and such act does cause such person to suffer emotional distress." Mo. Rev. Stat. § 565.090.1 (2016). Plaintiff offers no case showing where an officer lacked probable cause, or arguable probable cause (let alone "particularized to the facts of the case" (*White*, 580 U.S. at 79 (internal citation and quotations omitted)), to arrest an individual under Mo. Rev. Stat. § 565.090 (2016).

Plaintiff's attempt to distinguish *Just v. City of St. Louis*, 7 F.4th 761 (8th Cir. 2021) is also not persuasive. Defendants refer to this to describe the analysis courts use in determining whether arguable probable cause existed, thereby entitling an officer to qualified immunity. Once again, Plaintiff's contention that the facts do not match the present matter is neither the import nor does it meet Plaintiff's burden under *White*, explained *supra*.

Plaintiff cites a case from the District of Nevada to establish that a non-arresting officer can be liable under 42 U.S.C. § 1983 for false arrest. Doc. 19, p. 11 (citing *Lechner v. LVMPD*, 696 F. Supp. 3d 963, 992 (D. Nev. 2023)). However, in *Lechner*, the non-arresting officer told the plaintiff he was not free to leave until after he and another officer stopped street performers. *Id. Lechner* did not cite to any case other than *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978), which stands for the general proposition that anyone who "causes" any citizen to be subjected to a constitutional deprivation is also liable.

However, this Circuit does not recognize a cause of action for failure to intervene outside the context of a claim for excessive force. *See Aunhkhotep v. Kopfensteiner*, 4:23 CV 540 RWS, 2025 WL 40757, at *9 n.6 (E.D. Mo. Jan. 7, 2025) (internal citations omitted). Further, "Merely being present with the arresting officers at the scene is not enough, unless the plaintiff can show

---

[4] "[S]omething markedly greater than the level of uneasiness, nervousness, unhappiness, or the like which are commonly experienced in day-to-day living." Mo. Rev. Stat. § 565.002(7).

that the defendant officer was part of the chain of command authorizing the arrest action." *Brown v. City of Huntsville*, 608 F.3d 724, 737 (11th Cir. 2010); *see also Alexander v. Smith*, 561 Fed. Appx. 421, 424 (5th Cir. 2014) (citing *Brown* for same proposition). Plaintiff's cite to *Lechner* circuit neither constitutes controlling case law nor a robust consensus of cases of persuasive authority. As Plaintiff has failed to meet her burden, qualified immunity should apply to Deputy Smith.

**C. Plaintiff's claims in Count II should be dismissed based on failure to state a claim and official immunity.**

Plaintiff relies on *Blue v. Harrah's North Kansas City, LLC*, 170 S.W.3d 466, 479–80 (Mo. App. W.D. 2005), in arguing the jury should be allowed to assess the issues of bad faith. Doc. 19, p. 12. However, the *Blue* Court, issued approximately twenty years ago, found there were facts in the record suggesting a genuine dispute of material fact regarding bad faith or malice.

As this Court is aware, it is this Court's "duty. . . to examine the state law and apply it as it anticipates the highest court of the state would." *Dahlberg v. Harris*, 916 F.2d 443, 445 (8th Cir. 1990) (internal citation and quotations omitted). Here, the Court is "bound by the Supreme Court of Missouri's decisions." *Western Heritage Ins. Co. v. Asphalt Wizards*, 795 F.3d 832, 837 (8th Cir. 2015) (internal citation omitted).

This Court has expressed the warning that "courts must be cautious not to construe [official immunity] too narrowly lest they frustrate the need for relieving public servants of the threat of burdensome litigation." *Harmon v. Preferred Family Healthcare, Inc.*, 125 F.4th 874, 885 (8th Cir. 2025) (internal citations and quotations omitted, original bracketing). In attempting to state a claim, absent the pleading of "facts establishing an exception to official immunity. . . the pleadings

are insufficient to state a claim which is not barred by the doctrine of official immunity as a matter of law." *Id.* at 886 (internal citations and quotations omitted).

In *State ex rel. Love v. Cunningham ex rel. Ludwick*, the plaintiffs alleged employees acted maliciously, blatantly, intentionally, willfully wrong, in bad faith, and negligently in connection with an assignment of a decedent to stripe an intersection without the required protective vehicle. 689 S.W.3d 489, 493, 496–97 (Mo. banc 2024). A vehicle struck and killed the decedent and her unborn child while working in the striping area. *See id.* However, the Missouri Supreme Court noted allegations of "malice" and "bad faith" "are legal conclusions. . . and this Court's standard of review provides this Court will not 'blindly accept' legal conclusions." *Id.* at 497.

Here, this Court abides by the standard that a legal conclusion is an insufficient allegation with respect to review on a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). Plaintiff's conclusory allegations of malice and bad faith do not allow the issue to be submitted to a jury. The facts Plaintiff have alleged along with the video (embraced by the pleadings) and/or along with facts blatantly contradicted by the video fail to contain facts supporting such allegations of malice and bad faith. The reasonableness of Defendants' actions given all of the circumstances do not give rise to any plausible inference of malice or bad faith. *See also Carlton v. Means*, 688 S.W.3d 625, 630 (Mo. App. E.D. 2024) ("The test for malice, then, is two-pronged: it requires both an *act* contrary to duty and done with a wicked purpose or in reckless disregard of others' rights (i.e., 'wantonly') *and* an actual *intent* to injure or prejudice another.") (original emphasis); *Harmon*, 125 F.4th at 886 (citing *Stephens v. Dunn*, 453 S.W.3d 241 (Mo. App. S.D. 2014)) (summarizing *Stephens* as "finding the plaintiff did not allege facts establishing an exception to official immunity because the plaintiff did not allege the existence nor

breach of a duty but rather made the bald assertion the officials acted in bad faith without specific facts on the issue."). In short, Plaintiff has failed to sufficiently allege bad faith or malice.

**D. Plaintiff's claims in Count III should be dismissed based on qualified immunity.**

Plaintiff has argued statements to third parties about experiences were protected. This appears to reiterate points previously made, which Defendants have rebutted. Plaintiff relies on *Quraishi v. St. Charles Cnty., Missouri*, 986 F.3d 831 (8th Cir. 2021) for the proposition that using an arrest to interfere with a First Amendment activity is a violation. Defendants have shown the existence of arguable probable cause, which defeats such a claim. *See* Doc. 10, pp. 12–13. Plaintiff's other citations do not pertain to harassment, and offer no situations particularized to the facts of this case.

Plaintiff cites *Nieves v. Bartlett*, 587 U.S. 391, 406 (2019) for the proposition that a narrow qualification to the rule that probable cause defeats a First Amendment retaliation claim where officers have probable cause, but typically exercise their discretion not to do so. However, the Supreme Court stated, "For those reasons, we conclude that the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 407 (internal citation omitted). Plaintiff has not alleged ,nor argued, otherwise similarly situated individuals not engaged in the same sort of protected speech had not been arrested. The qualification, therefore, does not apply as it has not been plausibly alleged under *Iqbal*.

**E. Plaintiff's claims in Count IV should be dismissed as it is subsumed into her false arrest claim, based on official immunity, and for failure to state a claim.**

Defendants have addressed arguments Plaintiff has made regarding official immunity. *See supra*. Plaintiff's argument that she is not simply repackaging her claim of false arrest as a claim

of intentional infliction of emotional distress is unclear. Defendants did not argue it is subsumed in Count I (federal claim), but into Count II (false imprisonment), as Count II references a traditional state law tort. Plaintiff's claim in Count IV is exactly the type of claim the Missouri Supreme Court has stated is barred. *See K.G. v. R.T.R.*, 918 S.W.2d 795, 799 (Mo. banc 1996) (citing Restatement of Torts (Second), § 47) ("However, the claim for intentional infliction of emotional harm will not lie where the alleged conduct is intended to invade other legally protected interests of the plaintiff or intended to cause bodily harm."). Comment a. of the Restatement (Second) of Torts, § 47, states:

> The rule stated in § 46 creates liability only where the actor intends to invade the interest in freedom from severe emotional distress. The fact that the actor intends to invade some other legally protected interest is insufficient to create liability where the only effect of his act is the creation of emotional distress, unless the emotional distress consists of an apprehension of the immediate infliction of an intended harmful or offensive contact, as to which see §§ 21–34.

Illustration 1 states: "A attempts to arrest B under an invalid warrant. B succeeds in avoiding arrest by running away. B is affronted, humiliated and angry, broods over the matter, and suffers severe emotional distress. A is not liable to B." *Id.* The illustration is helpful here, as Plaintiff has claimed she was arrested without a warrant and without probable cause, where she thereby was caused emotional distress.

Under Missouri law and the Restatement (Second), § 47, Plaintiff's purported claim of intentional infliction of emotional distress is not independent from any potential claim of false imprisonment—it is repackaging of a traditional tort claim. In *K.G.*, "[i]ntentionally subjecting a young child to sexual contact" did not allow for an independent cause of action for intentional infliction of emotional distress. *K.G.*, 918 S.W.2d at 799. In *State ex rel. Halsey v. Phillips*, asking for naked photographs, sending naked photographs of a woman the individual said was his wife,

and placing an erect penis near one's face while at work (where there was no allegation of apprehension of an offensive touching or completing the offense touching), the claims were independent from assault or battery claims. 576 S.W.3d 177, 181 (Mo. banc 2019).

## ***III. CONCLUSION***

WHEREFORE, Defendants respectfully request this Court enter an order staying this matter under *Wallace v. Kato*, or dismissing this matter, for costs, and for such further relief this Court deems just and proper.

/s/ Robert T. Plunkert
Robert T. Plunkert #62064MO
PITZER SNODGRASS, P.C.
Attorney for Defendants Deputy Connor Pritchett and Deputy Carl Smith in their individual capacities
100 South Fourth Street, Suite 400
St. Louis, Missouri 63102-1821
(314) 421-5545
Email: plunkert@pspclaw.com

I hereby certify that a copy of the foregoing filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following or U.S. mail for parties not registered with CM/ECF, on this 6th day of January, 2026:

Sam J. Alton
Clayton L. Dowd
Douglas P. Dowd
Alex R. Lumaghi
DOWD & DOWD, P.C.
211 North Broadway, 40th Floor
St. Louis, Missouri 63102
Phone: 314-621-2500
sam@dowdlaw.net
clayton@dowdlaw.net
doug@dowdlaw.net
alex@dowdlaw.net
*Attorneys for Plaintiff*

Debbie S. Champion,
Victor H. Essen, II
RYNEARSON SUESS SCHNURBUSCH
CHAMPION, LLC
500 North Broadway, Suite 1550
St. Louis, MO 63102
Phone: 314-421-4430
Fax: 314-421-4431
dchampion@rssclaw.com
vessen@rssclaw.com
*Attorneys for Defendants Steve LaFrance and Lindsey LaFrance*

/s/ Phillip B. Schatz